DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SHARON WILSON,**
Appellant,

v.

**PALM BEACH COUNTY BOARD OF COUNTY COMMISSIONERS,**
Appellee.

No. 4D2024-3347

[July 1, 2026]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Carolyn Ruth Bell, Judge; L.T. Case No. 502016CA011847XXXXMB.

Isidro Manuel Garcia of Garcia Law Firm, P.A., West Palm Beach, for appellant.

Sean Fahey, Assistant County Attorney, Palm Beach County Attorney's Office, West Palm Beach, for appellee.

CONNER, J.

After the jury awarded significant money damages to the appellant employee ("Wilson") against the appellee employer Palm Beach County Board of County Commissioners ("the County"), Wilson now appeals from the trial court's denial of her petition for mandamus seeking to compel recovery from the County of the amount to which she would be entitled under federal Title VII recovery caps, rather than Florida sovereign immunity caps, as the trial court had determined. We affirm the trial court's determination that the applicable Florida sovereign immunity caps are not preempted by Title VII's recovery caps.

**Background**

Wilson brought an employment discrimination claim against the County under the Florida Civil Rights Act of 1992 ("FCRA"). A jury awarded Wilson $243,372 in economic damages for lost wages and benefits and $500,000 in non-economic damages for emotional pain, mental anguish, inconvenience, and loss of reputation.

Post-trial, the County moved to set aside the verdict and alternatively for remittitur. As to remittitur, the County requested the trial court "impose a limitation on the amount that Plaintiff may recover from the County of no more than $200,000.00, consistent with section 768.28(5), Florida Statutes [(2015)], and inclusive of all damages, costs, post-judgment interest and attorney's fees."

In response to the remittitur motion, Wilson argued that the amount of the judgment should not be reduced, because the FCRA's recovery cap was preempted by Title VII of the federal Civil Rights Act, which provides a higher recovery cap than the FCRA recovery cap.

During a hearing on Wilson's motion for entry of a final judgment, the trial court noted that the final judgment did not need to include any language about the FCRA recovery cap, despite the County's request to include such language, because "it's operational law" and therefore "any reference to a statutory cap by either statute or number is surplusage. By operation of law, the County has it, and it's not necessary for the entry for the final judgment[.]"

After a hearing on the County's remittitur motion, the trial court denied remittitur of economic damages, but granted remittitur of non-economic damages, after determining that Wilson's discrimination claim was "garden variety" and the $500,000 non-economic award "shock[ed] the conscience of the Court." The trial court reduced the non-economic award to $60,000. Notably, the trial court's remittitur order did not discuss statutory caps or preemption. The trial court subsequently entered an amended final judgment against the County for $303,372.

The County appealed from the amended final judgment—raising issues regarding the underlying trial—while Wilson cross-appealed from the remittitur of the noneconomic damages award and denial of her front pay request. We affirmed the final judgment, including the remittitur, but reversed the imposition of a daily fine sanction imposed by the trial court if Wilson's employment was not reinstated by a certain date. *Palm Beach County v. Wilson,* 386 So. 3d 937, 938-40 (Fla. 4th DCA 2024).

After we issued the mandate, Wilson filed a petition for writ of mandamus in the trial court, requesting the trial court to "direct[] the [County] to pay [Wilson] and her counsel, the sum set forth in the Final Judgment, [and] reasonable attorney's fees and costs[.]" The mandamus petition did not argue that Title VII's recovery caps applied over the Florida's recovery caps.

2

The County filed its amended response in opposition to the mandamus petition and requested the court determine the applicability of Florida's sovereign immunity recovery cap, as codified in section 768.28(5). The County noted that it was "ready and willing to issue payment of the statutory cap of $200,000.00," but that "[t]o the extent Plaintiff attempts to argue that federal Title VII remedies should be applied, in lieu of the [FCRA] remedies she elected by bringing her action under the [FCRA] instead of under Title VII, the Court should decline Plaintiff's invitation to rewrite the law." Further, the County noted that Wilson "has alleged the existence of '*Guerra*[1] preemption' as to the statutory cap in this action and relies on *Carsillo v. City of Lake Worth*, 995 So. 2d 1118 (Fla. 4th DCA 2008)[,]" but that "the case law makes clear that Title VII does not preempt the FCRA."

Wilson then filed a reply in support of her mandamus petition, detailing her arguments about why Florida's recovery cap was preempted by federal law or applied to only compensatory damages, but not back wages, attorney's fees, and costs.

A successor judge, who did not preside over the trial or grant the remittitur, held a hearing on Wilson's mandamus petition. The successor judge concluded that Florida's recovery cap was a cap on all recovery, and "no basis" existed for concluding Florida's recovery cap was preempted by Title VII's recovery cap. The successor judge found "the fact that . . . the federal statute and the state statute have been considered different causes of action to be important because . . . it's important that all parties have notice of any causes of action that they need to defend against." The successor judge found no basis "that the federal statute preempts the state statute on the damages issue. Certainly not in a case where it hasn't been pled." The successor judge stated she was "going to adopt the reasoning of the County in its objection and response, and . . . deny any request to exceed the statutory cap on that basis." Finally, the successor judge ruled that she would issue a writ of mandamus for the $200,000 "just to ensure that it will be paid."

The successor judge subsequently issued an order consistent with the rulings during the hearing—denying the petition "as to amounts over $200,000" but granting the petition "as to amounts up to and including $200,000." As for Wilson's preemption argument, the successor judge found "no basis to conclude that the federal statute preempts the state

---

[1] *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272 (1987).

statute on issue of damages, particularly where the same was not pled in this action."

After the successor judge entered the order denying the total mandamus relief sought, Wilson gave notice of appeal.

## Appellate Analysis

Initially, we address the County's argument that we should dismiss this appeal for lack of jurisdiction because the trial court's ruling on the preemption issue was not timely appealed and because Wilson improperly sought mandamus relief. We disagree. In the prior appeal, neither side raised the issue of statutory caps on damages, and the trial court did not explicitly rule on the issue. Additionally, we have previously noted that "[w]hen the circuit court denies an original mandamus petition, as opposed to a mandamus petition seeking an appellate remedy, review in this Court is by plenary appeal." *da Silva v. State*, 329 So. 3d 216, 218 n.2 (Fla. 4th DCA 2021) (citation omitted). Further, "mandamus is the proper, and indeed only, vehicle for enforcing a judgment against a governmental entity." *Navarro v. Bouffard*, 522 So. 2d 515, 517 (Fla. 4th DCA 1988) (citing *City of Ocoee v. State ex rel. Harris*, 20 So. 2d 674, 675 (Fla. 1945)); *see also Wells v. State*, 952 So. 2d 582, 583 (Fla. 4th DCA 2007); *N. Coats v. Metro. Dade County*, 588 So. 2d 1016, 1017 (Fla. 3d DCA 1991). Accordingly, we have jurisdiction, and we reject the County's argument for dismissal. Fla. R. App. P. 9.030(b)(1)(A).

Wilson argues "[t]he damages caps that purport to limit recovery under the Florida Civil Rights Act are preempted by federal law." The County responds the FCRA recovery cap is not preempted by Title VII, because the FCRA recovery cap does not interfere with Title VII's ability to carry out Congress's full purpose and objectives.

"A trial court's ruling on a petition for writ of mandamus is reviewed for an abuse of discretion." *Hollis v. Massa*, 211 So. 3d 266, 268 (Fla. 4th DCA 2017) (citing *Rosado v. State*, 1 So. 3d 1147, 1148 (Fla. 4th DCA 2009)). However, "[w]hen faced with questions of statutory application and federal preemption, we apply a de novo standard of review." *770 PPR, LLC v. TJCV Land Tr.*, 30 So. 3d 613, 616 (Fla. 4th DCA 2010) (quoting *Marcy v. DaimlerChrysler Corp.*, 921 So. 2d 781, 783 (Fla. 5th DCA 2006)).

We have explained that "[i]n determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, our sole task is to ascertain the intent of Congress." *Id.* (quoting *Guerra*, 479 U.S. at 280). Importantly, "[t]he supremacy

question is generally met with a presumption against preemption." *Id.* (quoting *Aguayo v. U.S Bank*, 658 F. Supp. 2d 1226, 1231 (S.D. Cal. 2009), *rev'd*, 653 F.3d 912 (9th Cir. 2011)).

Federal law can supersede state law in three ways: (1) express preemption; (2) implied preemption; and (3) conflict preemption. *Id.* at 616-17. Relevant here, conflict preemption "arises when 'compliance with both federal and state regulations is a physical impossibility,' or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 617 (quoting *Hillsborough Cnty v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)).

While Wilson does not outright say conflict preemption exists, she implies as much by arguing "the State monetary remedy against governmental employers does impede the federal objective." Wilson claims that "[u]nder federal law, Plaintiff's recovery from the judgment . . . would stand at $303,372, plus attorney's fees and costs." Title VII places caps on compensatory and punitive damages depending on how many employees the defendant employs. 42 U.S.C. § 1981a(b)(3). For employers with more than 500 employees, Title VII limits compensatory and punitive damages to $300,000. 42 U.S.C. § 1981a(b)(3)(D). Additionally, back pay falls outside the compensatory damages cap. 42 U.S.C. § 1981a(b)(2). Further, "Title VII does not place a cap on attorney's fees." *Bd. of Trustees of Fla. State Univ. v. Esposito*, 991 So. 2d 924, 927 (Fla. 1st DCA 2008) (citation omitted).

Wilson claims that under *Guerra*, "the FCRA must be construed to provide at least the same remedy as federal law, which does not limit recovery of back wages or attorney's fees and costs, and which permits a recovery up to $300,000 for compensatory damages." She relies on *O'Loughlin v. Pinchback*, wherein the First District found that Title VII did not preempt the Florida Human Rights Act (the FCRA's predecessor), which "offer[ed] less protections to its citizens than does the corresponding federal law" by "not recognizing that discrimination against pregnant employees is sex-based discrimination." 579 So. 2d 788, 792 (Fla. 1st DCA 1991). Wilson argues that in *Carsillo*, we approved *O'Loughlin*'s proposition that, as a general rule, Title VII preempts the FCRA.

Contrary to Wilson's assertion, *Carsillo* did not hold that *O'Loughlin* established a general rule in Florida that Title VII preempts the FCRA. Rather, in *Carsillo*, we noted that "[i]t is the preemption discussion in *O'Loughlin*" that has resulted in the federal district courts interpreting "*O'Loughlin* as not allowing relief under the Florida Act for discrimination based on pregnancy, because the Florida Act was not amended." *Carsillo*,

5

995 So. 2d at 1120 (citing *Boone v. Total Rental Labs., Inc.*, 565 F. Supp. 2d 1323 (M.D. Fla. 2008)). In *Carsillo*, we disagreed that the Florida Act did not protect pregnancy discrimination as sex discrimination, and instead "conclud[ed] that the fact that Congress made clear in 1978 that its intent in the original enactment of Title VII in 1964 was to prohibit discrimination based on pregnancy as sex discrimination, it was unnecessary for Florida to amend its law to prohibit pregnancy discrimination." *Id.* In other words, *Carsillo* applied a consistency analysis, rather than a preemption analysis.

Nonetheless, as the County argues, "*O'Loughlin* was a case about the substantive scope of the [FCRA's predecessor] . . . not its remedies." (emphasis added). We agree that *O'Loughlin's* preemption analysis was focused on the grounds for protections provided (or not provided) under the FCRA rather than the FCRA's remedies. The FCRA's recovery cap involves a remedy, not grounds for protection.

Wilson conflates a remedy with protection. Indeed, contrary to Wilson's assertion, *Guerra* did not hold that "State law could be preempted, but only when it provided a lesser remedy than federal law." Rather, in *Guerra*, the Court held that California's statute, which appeared to favor pregnant women by requiring employers to provide leave and reinstatement to pregnant employees, was not preempted by Title VII, because the California statute did not "compel California employers to treat pregnant workers *better* than other disabled employees; it merely establishes benefits that employers must, at a minimum, provide to pregnant workers. Employers are free to give comparable benefits to other disabled employees[.]" 479 U.S. at 291 (emphasis in original).

The County relies on the Eleventh Circuit's decision in *Bradshaw v. School Board of Broward County*, 486 F. 3d 1205 (11th. Cir. 2007), which is instructive. In *Bradshaw*, the Eleventh Circuit analyzed the FCRA's statutory cap and the effect of such a limitation on a federal court judgment for a Title VII violation. *Id.* at 1207. The employee in *Bradshaw* brought a federal court action against her employer for sexual harassment under both the FCRA and Title VII, and the federal jury awarded her $500,000 in compensatory damages. *Id.* Both Title VII and the FCRA limited compensatory damages, but the employee in *Bradshaw* argued that Title VII preempted the FCRA recovery cap. *Id.* at 1210.

The Eleventh Circuit disagreed, explaining that "Florida's limited remedy is consistent with Title VII, which permits states to enact their own antidiscrimination laws, but does not *require* states to do so, or to have

6

them enforced with any particular remedy." *Id.* (emphasis in original). The Eleventh Circuit further explained:

> Title VII will not be "deemed" (that is, construed) to prevent states from imposing liability in any way they see fit, so long as the states do not interfere with Title VII by requiring or permitting acts that Title VII would forbid. In the present case, Florida does not want to impose liability for compensatory damages beyond Title VII's cap. We therefore do not deem Title VII to limit Bradshaw's state law recovery; <u>the relevant state law itself limits the recovery</u>. Bradshaw's argument posits a nonexistent remedy, then uses Title VII to invalidate the actual law that fails to grant her that remedy. It is pure bootstrapping.

*Id.* at 1211 (emphasis added).

Wilson makes no attempt to distinguish *Bradshaw*, and instead contends "that anything less than what was Congress' remedial intent interferes and thwarts the intended objective of Title VII and is preempted by federal law." But, as *Bradshaw* explains, Title VII does not prevent states from imposing liability however they see fit. *Id.* Further, as the County submits, under *Guerra*, FCRA's cap is not "inconsistent with the purposes of the federal statute," which are "to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of . . . employees over other employees." 479 U.S. at 288, 292 (internal quotation marks and citation omitted). That is because, as the County argues, "[t]he limit on the amount of recovery has no bearing on the scope of employer activity that is unlawful, nor does it change that an aggrieved employee can bring an action and impose liability on an employer that has engaged in discrimination." Accordingly, we reject Wilson's preemption arguments and affirm the trial court's order determining that Title VII's recovery cap does not preempt Florida's recovery cap under section 768.28(5).

## Conclusion

Having determined that section 768.28(5)'s recovery cap limits Wilson's recovery against the County and is not preempted by Title VII's recovery cap, we affirm the trial court's order limiting Wilson's recovery under the jury verdict to $200,000 for monetary damages, attorney's fees, costs, and post-judgment interest. We affirm as to the other issues raised on appeal without discussion.

*Affirmed.*

LEVINE and SHEPHERD, JJ., concur.

\* \* \*

***Not final until disposition of timely-filed motion for rehearing.***